*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* A. EASTER, Minor.

UNPUBLISHED
October 10, 2024
12:26 PM

No. 370059
Berrien Circuit Court
Family Division
LC No. 2022-000018-NA

Before: SWARTZLE, P.J., and REDFORD and FEENEY, JJ.

PER CURIAM.

Respondent-father appeals as of right the trial court's order terminating his parental rights to the minor child, AE, under MCL 712A.19b(3)(c)(*i*) (conditions that led to adjudication have not been rectified), (3)(c)(*ii*) (other conditions creating grounds for jurisdiction have not been rectified), and (3)(j) (reasonable likelihood of harm). This case arose from respondent's physical abuse of the child and her sister, as well as domestic violence against their mother and on-going substance abuse. On appeal, respondent-father argues that the trial court erred by determining that termination of his parental rights was in the child's best interests.[1] We disagree and affirm the trial court's termination order.

"Best interests are determined on the basis of the preponderance of the evidence." *In re LaFrance*, 306 Mich App 713, 733; 858 NW2d 143 (2014). We review the trial court's determination of best interests for clear error. *In re Olive/Metts*, 297 Mich App 35, 40; 823 NW2d 144 (2012). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re BZ*, 264 Mich App 286, 296-297; 690 NW2d 505

---

[1] Respondent-father does not challenge the statutory grounds for termination. Therefore, we presume that the trial court did not clearly err by finding that the unchallenged statutory grounds were established by clear and convincing evidence. See *In re JS & SM*, 231 Mich App 92, 98-99; 585 NW2d 326 (1998), overruled in part on other grounds *In re Trejo Minors*, 462 Mich 341; 612 NW2d 407 (2000). Nevertheless, the record supports the trial court's determination that statutory grounds for termination existed pursuant to MCL 712A.19b(3)(c)(*i*), (3)(c)(*ii*), and (3)(j).

(2004). "Appellate courts are obliged to defer to a trial court's factual findings at termination proceedings if those findings do not constitute clear error." *In re Rood*, 483 Mich 73, 90; 763 NW2d 587 (2009).

"Once a statutory ground for termination has been proven, the trial court must find that termination is in the child's best interests before it can terminate parental rights." *In re Olive/Metts*, 297 Mich App at 40, citing MCL 712A.19b(5). When considering best interests, the focus is on the child rather than the parent. *In re Moss*, 301 Mich App 76, 87; 836 NW2d 182 (2013). "The trial court should weigh all the evidence available to determine the child's best interests." *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014). The trial court may consider such factors as "the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *In re Olive/Metts*, 297 Mich App at 41-42 (citations omitted). Other factors the trial court may consider include the "parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption." *In re White*, 303 Mich App at 714.

In concluding that termination of respondent-father's parental rights was in the child's best interests, the trial court noted that, although it was clear that the child loved respondent-father, respondent-father's unwillingness to change and become a better parent through participation in services made termination of his parental rights the best course of action. The court recognized that the child ran away from her foster care and respite placements to be with her parents, but this bond was based on the trauma she suffered at their hands and was not healthy or appropriate based on the testimony of the child's therapist and case manager. The trial court further noted that respondent-father denied using illegal substances, having anger issues, or doing anything wrong throughout the pendency of this case, despite testing positive for amphetamines, methamphetamines and THC and pleading no contest to fourth-degree child abuse regarding the child's older sister. The trial court explained that respondent-father's inability to take accountability for himself and his actions did nothing to help the child or ensure that she was in a safe environment. Respondent-father refused to accept the trauma he caused and work with the child to process that trauma. Despite repeated warnings, respondent-father continued to discuss the foster care case with the child and played the victim during his parenting time visits with her, which were detrimental to her emotional stability. The trial court also noted that the child was doing well in her foster-care placement and that her placement expressed a desire to adopt her. The child enjoyed attending church and found a community of support there that she believed she could not maintain if living with respondent-father. The trial court further noted that the child needed stability and permanency, which her foster placement was prepared to provide for her while respondent-father was unable to do so now or in the future.

A review of the record supports the trial court's determination that termination of respondent-father's parental rights was in the child's best interests. Respondent-father's barriers to reunification included emotional stability, social support, parenting skills, child characteristics, substance abuse, domestic relations, and parenting time. In finding statutory grounds to terminate respondent-father's parental rights, the trial court properly determined that respondent-father failed, after being provided numerous services over the span of nearly two years, to rectify these barriers. At the time of termination, respondent-father continued to blame the child's sister and mother for the entire case and failed to acknowledge how his actions played a role in the

circumstances the child was placed in. He complained that the child's placement in foster care had a negative impact on him; notably, the child's case manager and counselor testified that the child felt a responsibility toward respondent-father and believed she needed to take care of him. During the pendency of this case, respondent-father exhibited an unhealthy unwillingness to take any responsibility for his wrongdoing or alter his behavior to better care for the child.

At the May 31, 2022 adjudication trial, the child testified that her dad scared her and needed help with his anger, as it needed to change. He often took his anger out on her mother who had spinal stenosis, so she was aware that her father would "yell at [mother] and get into many arguments with" the child's mother. She also testified that respondent-father got upset when he found a cell phone under her pillow as she was grounded from her phone. He "accidentally smacked [the child] in the eye" as he turned around during that argument. The child also heard the December 2021 argument between her older sister and respondent-father that led to him being charged with child abuse. Unfortunately, respondent-father was not present at the adjudication and did not hear his daughter testify.

Despite participation in a parenting-skills class, respondent-father exhibited lackluster parenting skills, including failing to prioritize the child and an inability to regulate his emotions around her.[2] Testimony from the termination hearing revealed that respondent-father attended only 26 out of 41 possible parenting-time visits with the child and, during those visits, consistently discussed the case with the child despite clear instruction not to do so. During one particular visit, respondent-father even told the child that her poor behaviors were the reason why she was still in foster care. The trial court observed that when he testified, respondent-father denied drug use even though he's tested positive, and he denied any history of abuse and any anger issues; according to respondent-father, the "whole case came to the court [] because he didn't turn on the internet for his [older] daughter," which was not true. The case was filed because of his physical abuse of the older child, domestic violence and drug abuse and respondent-father was offered extensive services to address all of those issues. Respondent-father's behavior demonstrated his refusal to take accountability for his actions or prioritize the child's well-being. The trial court recognized that respondent-father was clearly unwilling to change and become a better parent through participation in services. Additionally, although there was a bond between the child and respondent-father, both the caseworker and the child's counselor testified that the bond was not healthy or appropriate, creating a "parentified" association with her father.[3] The caseworker testified that the bond resembled a trauma bond and that the child would not be able to process and understand the trauma she experienced until that bond was severed.[4] Therefore, although the child

---

[2] While respondent-father asserted that he was in "substantial compliance" with and benefitted from his case service plan, the evidence clearly indicated neither compliance nor benefit sufficient to overcome his significant barriers of emotional instability, domestic abuse and substance abuse.

[3] The child was 12 years old when the termination hearings occurred.

[4] Indeed, in considering the entire record and the additional opportunities respondent-father was offered to invest in services to show he could place his child's needs first and foremost, the trial court properly found that the love the father and daughter shared did not equate with her best interests.

and respondent-father were bonded, there was a clear preponderance of evidence supporting the trial court's conclusion that it was in the child's best interests for respondent-father's parental rights to be terminated.

Affirmed.

/s/ Brock A. Swartzle
/s/ James Robert Redford
/s/ Kathleen A. Feeney